Cite as 2020 Ark. App. 218

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR–19–634

| | |
|---|---|
| MARK A. WATTS<br><br>               APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>               APPELLEE | **Opinion Delivered** April 8, 2020<br><br>APPEAL FROM THE YELL COUNTY CIRCUIT COURT, SOUTHERN DISTRICT<br>[NO. 75SCR-17-65]<br><br>HONORABLE JERRY RAMEY, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Judge**

A Yell County Circuit Court jury convicted Mark Watts of murdering Phyllis Chambers and Martha Veazey. He was sentenced to thirty years' imprisonment in the Arkansas Department of Correction. Watts appeals his convictions. We affirm the convictions for second-degree murder.

I. *The State Sufficiently Corroborated Watts's Confession*

Watts first argues that the State failed to present physical evidence during the trial that corroborated his confession. Generally stated, Arkansas law requires that a defendant's out-of-court confession be supported by additional evidence. Watts says that the State never located the murder weapon, that there was no blood on his (Watts's) clothes, and the State did not submit as evidence a ledger that it relied on to establish a motive for the murders. We hold that the State presented substantial evidence of the murders.

Watts's main argument centers on section 16-89-111(d) of Arkansas Code Annotated, which provides:

A confession of a defendant, unless made in open court, does not warrant a conviction unless:

(1) Accompanied with other proof that the offense was committed; or

(2) Supported by substantial independent evidence that would tend to establish the trustworthiness of the confession.

Ark. Code Ann. § 16-89-111(d) (Supp. 2019).

Known as the *corpus delicti* rule, the statute essentially requires that the State establish the existence of an injury or harm caused by someone's criminal activity. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001). But the State does not necessarily have to establish any further connection between the crime and the defendant than does the confession. *Id.* And the evidence that tends to corroborate a confession does not have to be, in and of itself, sufficient to sustain the conviction if considered apart from the confession. *Morgan v. State*, 286 Ark. 264, 691 S.W.2d 164 (1985). In other words, if we set aside Watts's confession to the police, does the other evidence of record demonstrate that someone murdered the two women who Watts was charged with killing?

A person commits murder in the second degree if he or she knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-103(a)(1) (Repl. 2013). The evidence at trial established the following events. On 2 July 2017, the Danville Police Department received a call about an unresponsive person at a residence on Highway 10 West. Watts, who was the 911 caller, was standing in the yard when the police officers arrived. Officer John Stafford

2

found the first victim in a pool of blood, so he drew his weapon. He found the second victim in another room with "blood all around her head." Crime-scene photographs were taken. The victims were identified as Phyllis Chambers and her sister Martha Veazey. Both were dead when Officer Stafford arrived. Arkansas State Crime Laboratory chief medical examiner Charles Kokes testified that he performed autopsies on the two women; their manner of death was "blunt force injuries of the head and brain." He therefore concluded that two homicides had been committed.

On July 25, police detectives interviewed Watts. He told them that he went to Chambers's house around 5:00 p.m., and an argument ensued. Watts admitted that he killed Chambers and Veazey and then fled the scene. Feeling "bad" after he had left, he told the police that he returned to the house and called 911. Watts told the police that he had hit the women with a hammer, which he later threw "over by the boats" in or near a pond and a field.

Contrary to Watts's argument on appeal, his confession was sufficiently corroborated under the law. Watts confessed to killing Chambers and Veazey with a hammer and then disposing of the murder weapon. The victims' bodies were recovered; both victims died from blunt-force trauma to the head, which was no accident, according to the autopsy. The evidence is sufficient to sustain the guilty verdicts under Ark. Code Ann. § 16-89-111(d)'s *corpus delicti* rule. There is no question about that. *Barnes*, *supra*.

II. *Evidence of a Forged Check Was Admissible Against Watts*

Watts's second point is that the circuit court abused its discretion when it admitted evidence that Watts had forged a check. The issue came up during the July 25 police

3

interview, which the prosecution played for the jury during the trial. On the video recording, one of the interviewing detectives stated:

> Well, let's talk about the check. Well, I know—but there's a check we found in Martha's [one of the victim's] purse. It's made out to you, from Riley's Farms, and it had Mark Watts on there, and it looks like your handwriting. It's dated June 5th[.]

Watts's attorney objected, and a bench conference ensued.[1] He argued that although Watts had been separately charged with committing a forgery, the charge was unrelated to the murder case, and the jury "was about to get something that was not part of the [murder] charges." Counsel asked the court to "prohibit the state from playing that part of the DVD that deals [with] the check." He also said:

> I would also note for the record that the state is probably going to rely on 404B about proof—prior bad acts, what have you, in order to bolster this argument, and I'm going to suggest to the Court that's contrary to the theory of their case.

The prosecutor replied, "[T]he state's theory is that the murder happened because the defendant owed money to the victim," and it was a proper use of Rule 404(b) evidence to explain Watts's intent, opportunity, and motive. In any event, according to the prosecution, any prejudicial effect was outweighed by the proposed evidence's probative value.

---

[1]In February 2020, we ordered Watts to file a supplemental addendum. *Watts v. State*, 2020 Ark. App. 102. In that opinion we misstated a fact. We wrote that Watts had proffered a redacted version of the transcript of the DVD as defendant's proffered exhibit No. 1. But Defendant's proffered exhibit No. 1 is an unedited, unredacted copy of the transcript that the prosecuting attorney had given the jury to follow as the DVD was being played. It is not an edited or redacted copy of the transcript. As stated in the prior opinion, the circuit court ordered the bailiff to gather the transcripts and remove them from the courtroom and denied Watts's request to redact the DVD.

The circuit court allowed the jury to learn about the check's existence, under Ark. R. Evid. 404(b), for the limited purpose of showing Watts's "intent, his opportunity, and his motive." The court found that, on balance, the probative value of the evidence was not substantially outweighed by any potential prejudice. Ark. R. Evid. 401, 403 (2019).

When the bench conference ended, the prosecution continued playing for the jury the DVD of the July 25 police interview. Simply summarized, Watts admitted making the check payable to himself for $2500. He also said that he did not cash it because "it wasn't right," although one of the sisters had asked him to cash it. He admitted that he owed Phyllis Chambers money (approximately $1700) for drugs, that he left the check at her house after refusing to cash it, and that "[s]he told me she tore it up." The uncashed check, dated June 5, was found in Veazey's purse.

We review a circuit court's admission of evidence for an abuse of discretion. *Gonzales v. State*, 2019 Ark. App. 600, 589 S.W.3d 505. Arkansas Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence is not admissible under Rule 404(b) if the purpose for offering it is to prove prior bad conduct. *Gonzales*, 2019 Ark. App. 600, at 17, 589 S.W.3d at 516. Instead, Rule 404(b) evidence is proper when it is independently relevant, meaning it must tend to make the existence of a consequential fact more or less probable than it would be without the evidence. *Id*. Any circumstance that

5

links a defendant to the crime or raises a possible motive for the crime meets the "independently relevant" test under Rule 404(b). *Id.*

Although evidence of other crimes or bad acts may be independently relevant and therefore admissible under Rule 404(b), the evidence's probative value must still outweigh the potential prejudice. Ark. R. Evid. 403. This court gives considerable leeway to circuit courts when determining whether a prior bad act is sufficiently similar to the crime charged to warrant admission under Rule 404(b). *Id.*

Having applied these legal principles, we agree with the State: Watts's statement that he forged a check is an independently relevant fact tending to establish his knowledge, intent, or motive for murdering the two sisters. Again, the State's theory was that Watts killed the women because he owed Chambers money ($1700) for pain pills that he had purchased. The State presented the jury with Watts's statement to the police that he owed Chambers money, which was documented in a ledger. The State also presented testimony that Chambers had threatened Watts by stating that she would send "that crazy-ass Robert [her son]" after him, to which Watts responded by beating Chambers and Veazey to death with a hammer.

The "forged check" evidence is independently relevant to support the inference that Watts killed the women because he owed Chambers money for the pills she had sold him. Veazey had a check in her purse that was drawn on an account unconnected to any that Watts himself had maintained. Though Watts had made himself the payee on the check, as opposed to one or both of the sisters, the check's existence still had a tendency to show that he was aware of the debt and had a motive to pay it—the motive being that Watts arguably

6

feared one or more of the sister's reprisals. We therefore conclude that the circuit court did not abuse its discretion by admitting the testimony related to the forged check.

### III. *Conclusion*

The convictions against Watts on two counts of second-degree murder are affirmed.

Affirmed.

GRUBER, C.J., and WHITEAKER, J., agree.

*Jeremy D. Wann*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.